IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALICIA DAWN WILLIAMS,       )<br>)<br>    Plaintiff,                 )<br>)<br>vs.                                       )<br>)<br>CAROLYN W. COLVIN, acting  )<br>Commissioner Social Security  )<br>Administration,                )<br>)<br>    Defendant.             )| Case No. CIV-14-220-HE |

## **REPORT AND RECOMMENDATION**

Alicia Williams (Plaintiff) filed this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision denying Plaintiff's applications for disability insurance benefits. *See* 42 U.S.C. § 405(g). United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b). Doc. 3.

After a careful review of the administrative record (AR), the parties' briefs,[1] and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

---

[1] Citations to the briefs reflect this Court's CM/ECF designation and pagination. Unless otherwise indicated, quotations in this report are reproduced verbatim.

## I. The Commissioner's final decision.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Plaintiff alleges disability as of April 1, 2010, at the age of forty-seven. AR 46, 48.

Adhering to the regulatory process adjudicators must follow to determine if a claimant is disabled within the meaning of the Social Security Act, the ALJ found Plaintiff: (1) is severely impaired by right shoulder and right knee disorders, diabetes mellitus, obesity, major depressive disorder, and anxiety; (2) has the residual functional capacity (RFC) to perform sedentary work, with limitations;[2] (3) has acquired work skills from her past relevant work which are transferable to other occupations with jobs existing in significant numbers in the national economy; (4) can perform these jobs; and (5) is not disabled. AR 26-37; *see* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the sequential process).

The Social Security Administration's Appeals Council found no reason to

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

review that decision, and the ALJ's decision became the Commissioner's final decision. AR 9-14.

## II. Review standards.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

**III. Analysis of Plaintiff's arguments.**[3]

    **A.    Whether "[t]he ALJ's finding that Plaintiff's acquired skills were transferable to a significant number of alternative sedentary jobs is contrary to law and not supported by substantial evidence."** Doc. 14, at 12.

Plaintiff challenges the ALJ's findings at step five of the sequential inquiry. Doc. 14, at 12-18.[4] At that step, the burden shifts to the Commissioner "to show that the claimant retains sufficient RFC . . . to perform work in the national economy, given her age, education and work experience." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Here, the ALJ relied on the testimony of a vocational expert in finding that Plaintiff "has acquired work skills from past relevant work (20 CFR 404.1568)." AR 36. The ALJ stated, and the record confirms, the expert testified that Plaintiff had past relevant work as

---

    [3]    Plaintiff's opening brief's table of contents suggests she is making an overarching claim of error supported by three separate arguments. Doc. 14, at 2. The brief, however, contains four distinct argument sections, *id.* at 12-16, 16-18, 19-21, 21-22, and this report separately considers the four arguments Plaintiff presents.

    [4]    At the outset of her response brief, "[t]he Commissioner notes that Plaintiff's brief does not appear to comply with LCivR 7.1 (d), as the print style appears to be less than 13-point type." Doc. 17, at 1 n.2. Plaintiff replies that the Commissioner's "accusation" is ill-founded and claims the "Opening Brief, as well as this Reply Brief, is written using 13 point font . . . ." Doc. 19, at 1. The Commissioner is correct. It is *readily* observable that *portions* of *both* briefs filed by Plaintiff – for example, Doc. 14, at 1-4, 15-16; Doc. 19, at 3 – are written in less than the required 13-point type. *See* LCvR 7.1(d). The undersigned cautions Plaintiff's counsel that any brief not meeting the requirements of this Court's local rules will be ordered stricken.

(1) a jewelry manager, DICOT 185.167-046, 1991 WL 671299, light and skilled; (2) an engraving manager, DICOT 704.131-010, 1991 WL 678972, light and skilled; (3) an office clerk, DICOT 209.562-010, 1991 WL 671792, light and semi-skilled; and (4) a customer service representative, DICOT 241.367-014, 1991 WL 672252, sedentary and skilled. *Id.* at 36, 72-75. The ALJ further stated, and the record further confirms, the expert testified this work "required the following skills: training new workers, ordering inventory, keeping records of merchandise, assign[ing] employees for duties, scheduling employees for work, and customer service." *Id.* at 36, 75-76.

Next, "[c]onsidering [Plaintiff's] age,[5] education,[6] work experience and [RFC][7]," the ALJ found "[Plaintiff] has acquired work skills from past relevant

---

[5] The ALJ found Plaintiff "was born on October 23, 1962 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date." AR 36. She further found Plaintiff "subsequently changed age category to closely approaching advanced age (20 CFR 404.1563)." *Id.*

[6] The ALJ found Plaintiff "has at least a high school education and is able to communicate in English (20 CFR 404.1564)." AR 36.

[7] The ALJ found Plaintiff "has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing of ladders, ropes or scaffolds; no balancing or crouching; occasionally climb stairs and ramps, kneel, crawl, and stoop . . . ." AR 30. She further determined Plaintiff retained the ability "to perform simple and some complex tasks with routine supervision; no public contact; no customer service; able to interact appropriately with supervisors and co-workers on a superficial work basis; and able to adapt to work situations." *Id.*

work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d))." *Id.* at 36. Evidence supporting this finding came, once again, from the vocational expert. The ALJ asked the vocational expert if there were any jobs in the regional and national economies that an individual with the same age, education, past relevant work experience, and RFC as Plaintiff could perform and directed the expert to begin by identifying any transferrable skill jobs. *Id.* at 76-77. The ALJ stated that

> [t]he vocational expert responded and testified that representative sedentary occupations such an individual could perform include: inventory clerk, D.O.T. #216.482-018, SVP 4, with 3,713 jobs in Oklahoma and 167,246 jobs in the national economy; calculating machine operator, D.O.T. #216.482.022, SVP 3, with 2,795 jobs in Oklahoma and 51,240 jobs in the national economy; and assignment clerk, D.O.T. #219.387-010, SVP 4, with 66, 469 jobs in the national economy and 2, 318 jobs in Oklahoma.

*Id.* at 37.

Considering Plaintiff's age, education, and transferable work skills, the ALJ then concluded that while Plaintiff could not perform the full range of sedentary work, "a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.22 and Rule 201.15." *Id.*

At step five, because "age is one of the factors that must be considered, it should surprise no one that the Commissioner faces a more stringent burden

6

when denying benefits to older claimants." *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001) (brackets and internal quotation marks omitted). Here, Plaintiff was under fifty at the time of her alleged onset of disability and, as a younger person, her age was not considered to seriously impact her ability to adjust to other work. *Id.*; 20 C.F.R. § 404.1563(c).

But, as of the date the ALJ reached her decision – May 31, 2013 – and the date Plaintiff was last insured for benefits,[8] Plaintiff was "closely approaching advanced age (age 50–54)" and, so, was at a stage when her "age along with a severe impairment(s) and limited work experience may seriously affect [her] ability to adjust to other work." 20 C.F.R. § 404.1563(d). "The acquisition of skills that are transferable to other work, however, gives a claimant 'a special advantage over unskilled workers in the labor market.'" *Dikeman*, 245 F.3d at 1184 (quoting SSR 82-41, 1982 WL 31389, at *2 (1982)). So, "[t]o find [a] claimant not disabled when she is closely approaching advanced age . . . the ALJ must . . . find that the claimant acquired skills in her past work that are transferable to other skilled or semi-skilled jobs." *Id*. As established above, the ALJ did so. AR 36-37.

Plaintiff explains that "[f]or purposes of this appeal" she "does not dispute

---

[8] Plaintiff "me[t] the insured status requirements of the Social Security Act through September 30, 2013." AR 28.

7

the validity of the [vocational] expert's testimony regarding what skills [Plaintiff] acquired in her past work" but, instead, maintains "the Commissioner failed to meet her Step Five burden to prove that [Plaintiff] had acquired sufficient occupationally significant skills which she would be able to use to meet the requirements of alternative work as an Audit-Machine Operator [DOT 216.482-018][R3], Calculating-Machine Operator [DOT 216.482-022][R3], and Assignment Clerk [DOT 219.387-010][R3]." Doc. 14, at 15. She argues that "[t]o make this determination, "the [c]ourt must address several factors related to the legal definition of 'transferability' . . . ." *Id.*

Plaintiff then "first note[s] that the fact that the expert may generically testify that a claimant's skills were transferable to other work is legally irrelevant where the ALJ does not define the term transferable or ask the expert to provide the information required to allow the ALJ to make a transferability finding." *Id.* To support this contention, she points the court to SSR 82-41 and concludes that "[i]t is improper to assume that the expert understood that 'transferable' as used in Social Security law is a legal term of art requiring consideration of specific factors which may, or may not, correlate with common place language." *Id.* She maintains "[t]he question of 'transferability' is an ultimate issue requiring administrative findings on the question of how the vocational factor of work experience is to apply given consideration of numerous

8

factors set out in the rules and regulations." *Id.* She concludes that "expert opinion on the matter cannot control or even be given special significance" and cites SSR 96-5p, 1996 WL 374183.[9] *Id.* She also cites *Winfrey v. Chater*, 92 F.3d 1017, 1024-25 (10th Cir. 1996), explaining that "[t]he Tenth Circuit has expressly rejected as improper the Commissioner's penchant for delegating judicial responsibilities to an expert." *Id.*

Contrary to Plaintiff's arguments, Social Security regulations specifically endorse the use of vocational experts where transferability is an issue. *See* 20 C.F.R. § 404.1566(e) ("If the issue in determining whether [a claimant is] disabled is whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist."); *see also Prince v. Apfel*, No. 97-5176, 1998 WL 317525, at *2 (10th Cir. 1998) (unpublished op.) (citing 20 C.F.R. § 404.1566(e), and concluding these "regulations specifically note the appropriateness of vocational expert testimony regarding the transferability of skills"); SSR 82-41, 1982 WL 31389, at *4 ("Skills, levels of skills and potential occupations to which skills from [past relevant work] may be transferred are for . . . the ALJ to determine (with the

---

[9] SSR 96-5p addresses the consideration of medical source opinions on issues reserved to the Commissioner.

assistance, when required, of a [vocational specialist] . . . ."); *Jensen v. Barnhart*, 436 F.3d 1163, 1166 (10th Cir. 2005) ("find[ing] no error in the ALJ's reliance on the [vocational expert's] opinion" on a transferability issue).

B. **Whether "[t]he Commissioner [failed to] meet her burden to prove that [Plaintiff] acquired sufficient occupationally significant skills to 'meet the requirements' of the alternative light and sedentary jobs at issue as the ALJ failed to elicit sufficient vocational testimony to perform the required analysis or make the requisite findings."** Doc. 14, at 16.

Citing *Jensen*, 436 F.3d at 1168, Plaintiff contends the ALJ failed to "elicit testimony comparing the claimant's transferable skills and the duties of the new jobs to support a finding that the claimant would have an advantage over other workers applying for the same jobs." Doc. 14, at 16. She maintains "the ALJ did not ask the expert to describe the most occupationally significant skills required for the alternative sedentary jobs she identified" and "[b]ecause the ALJ did not obtain this critical vocational information, the Commissioner did not meet her burden to prove [Plaintiff] acquired skills could be used to 'meet the requirments' of the alternative jobs cited by the expert." *Id.* at 17.

The Commissioner responds – correctly – that the ALJ is not required to make these inquiries. Doc. 17, at 10. Rather, the issue is whether substantial evidence supports the ALJ's decision that Plaintiff "has transferable skills [s]he can apply to" the jobs the vocational expert identified. *Jensen*, 436 F.3d at 1168.

Here, the ALJ questioned both Plaintiff and the vocational expert at length about the characteristics of Plaintiff's past relevant work, including her skilled and semi-skilled work as a store manager, office clerk, and sales merchandise marker. AR 49-52, 72-75. The vocational expert testified that Plaintiff had acquired work skills from those jobs – including auditing inventory, keeping records of merchandise, assigning employees for duties – that were transferable to jobs including work as an inventory or assignment clerk. *Id.* at 76-77. Substantial evidence supports the ALJ's decision.[10]

---

[10] Plaintiff also argued that the error she claimed was not harmless and pointed to statements in the "O-Net" as support. Doc. 14, at 17. The Commissioner responded that "[a]gency regulations and rulings identify the DOT, not the O*Net, as a source of reliable job information for determining disability claims and as suitable for administrative notice" and that "Plaintiff fails to point to any inconsistencies between the VE's testimony about the transferability of her job skills and the DOT." Doc. 17, at 11-12. In reply, Plaintiff reiterated that her "argument on this point was posed to meet the legal requirement that she show that the ALJ's failure to obtain necessary information from the expert was not harmless." Doc. 19, at 3. She argued that "[t]he Commissioner's rebuttal of the O-Net misses the point and should be disregarded." *Id.* Because the undersigned discerns no error by the ALJ in her development of the requisite evidence through the vocational expert, this report does not consider whether any purported error was harmless.

**C. Whether "[t]he Commissioner failed to meet her burden to prove that the limitations associated with [Plaintiff's] impairments would permit the specific skills identified by the expert to be used."** Doc. 14, at 19.

In order to frame this claim of error for review, the undersigned starts with Plaintiff's reply brief where she differentiates between what she claims is error warranting reversal and her opening brief's "g[iven] reasons why the ALJ's omission of a limitation in the ability to follow detailed instructions from her RFC findings was not harmless error." Doc. 19, at 4.

First, Plaintiff explains "[t]he ALJ stated that she relied on the opinions of the state reviewing physicians with regard to [Plaintiff's] mental limitations." *Id.* at 3. But, Plaintiff argues, "these physicians opined that [she] had moderate limitations in her ability follow detailed instructions, limitations which the ALJ did not include in her RFC. (R. At 355)." *Id.* She contends the ALJ erred "under the principles set out in *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) . . . by failing to explain why sh omitted a limitation in performance of detailed instructions from in her RFC findings." *Id.* at 3-4. She submits that "[i]n response, the Commissioner does not mention *Haga*, let alone distinguish this case from *Haga* or argue why *Haga* was wrongly decided." *Id.* at 4.

Again in her reply brief, Plaintiff states she "then gave reasons [in her opening brief] why the ALJ's omission of a limitation in the ability to follow

detailed instructions from her RFC findings was not harmless error." *Id.* at 4. She says "[t]he first reason was that the hypothetical based on the RFC did not relate with precision [Plaintiff's] limitations as set out in the medical evidence the ALJ says she relied on." *Id.* She further says that she "pointed to the case of *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) as supporting her position" and "[a]gain the Commissioners response does not mention *Wiederholt*, let alone distinguish from it or argue that it was wrongly decided." *Id.* Plaintiff states she "also presented another harmless error argument, showing that, according to the [DOT], the alternate jobs cited by the ALJ all require a reasoning level of R3." *Id.* She maintains that as she "was posing a harmless error argument, the question is not whether there was sufficient conflict between the DOT and expert testimony to require a remand." *Id.* at 5.

This report does not consider Plaintiff's harmless error arguments because Plaintiff fails to establish "that under the principles set out in *Haga* . . . the ALJ erred by failing to explain why she [sic] omitted a limitation in performance of detailed instructions from . . . her RFC findings." *Id.* at 3-4.

In explaining her assessment of Plaintiff's RFC, the ALJ stated that nonexamining State agency medical consultants had determined Plaintiff could perform simple and some complex tasks, to relate to others on a superficial work basis, and to adapt to a work situation. AR 35. She gave the opinion great

13

weight. *Id.* at 357, 35. Plaintiff maintains "these physicians also opined that [she] had moderate limitations in her ability to understand, remember, and carry out detailed instructions (R. at 355)" and that "[t]he ALJ failed to discuss why he was not including a limitation in performance of detailed instructions in here RFC findings." Doc. 14, at 19. As support, Plaintiff points to the Tenth Circuit's decision in *"Haga . . .* (holding that the ALJ should have explained why he rejected four of the moderate restrictions on a doctor's RFC assessment while appearing to adopt the others)." *Id.*

The Commissioner responds that "[t]he checked boxes indicating that Plaintiff experienced moderate limitations on understanding, remembering, and carrying out detailed instructions were within Section I of Form SSA-4734-F4-SUP (*see* Tr. 355 . . . .).[11] Doc. 17, at 6-7. She maintains the mental RFC assessment is recorded in Section III where the consultants opined that Plaintiff "can perform simple and some complex tasks," AR 357, and "[n]o further analysis of the Section I checked boxes was required." *Id.* at 8.

The undersigned agrees. The Tenth Circuit has explained by unpublished opinion that

> [a]ccording to the guidance in the Social Security Administration's

---

[11] Although the ALJ referred to the form at issue as "a Psychiatric Review Technique Form," AR 35, it is a Mental Residual Functional Capacity Assessment (MRFCA) form. *Id.* at 355-57.

> Program Operations Manual System (POMS), "Section I [of the Mental RFC Form] is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment[, whereas] Section III—Functional Capacity Assessment, is for recording the mental RFC determination." POMS DI 24510.060 (emphasis omitted), available at https:// secure. ssa. gov/ poms. nsf/ lnx/ 0424510060. "It is in [Section III] that the actual mental RFC assessment is recorded, explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id*.

*Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013).

The court has also cautioned that "this does not mean that an ALJ can turn a blind eye to moderate Section I limitations." *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015). "[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id*. Plaintiff does not so claim here.

Plaintiff has not established that "the ALJ erred by failing to explain why she [sic] omitted a limitation in performance of detailed instructions from . . . her RFC findings." Doc. 19, at 4.

**D.     Whether "the ALJ failed to make the requisite findings on the issue of transferability regarding the degree of occupationally significant similarity between [Plaintiff's] past work considering the tools and machines to be used whether the same or similar raw materials, products, processes or services were involved."** Doc. 14, at 21.

Plaintiff's assertion of error is unsupported. Her arguments pertain to a claimant named Jones who, unlike Plaintiff, was older than sixty, and to a different record entirely. *Id*. at 21-22. This report, therefore, does not address her final claim of error.

**IV.     Recommendation and notice of right to object.**

For the reasons stated, the undersigned Magistrate Judge recommends the entry of judgment affirming the final decision of the Commissioner.

The undersigned advises the parties of their right to object to this Report and Recommendation by the 21st day of September, 2015, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 31st day of August, 2015.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE